**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED MERCHANDISEWHOLESALE,
INC.,

                Plaintiff,        **MEMORANDUM OF**
                                    **DECISION AND ORDER**
      -against-                   13-CV-4259 (ADS)(ARL)

IFFCO, INC. and
IFFCO INTERNATIONAL CO.,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Kressel & Rothlein, P.C.**
*Attorneys for the Plaintiff*
684 Broadway
Massapequa, NY 11758
    By:   Stephen J. Kressel, Esq.

**Nixon Peabody LLP**
*Attorneys for the Defendant IFFCO, Inc.*
437 Madison Avenue
New York, NY 10022
    By:   Gregg A. Rubenstein, Esq.

**NO APPEARANCE:**

IFFCO International Co.

**SPATT, District Judge**.

      On June 14, 2013, the Plaintiff United Merchandise Wholesale, Inc. (the "Plaintiff")

commenced this action against the Defendants IFFCO, Inc. ("IFFCO") and IFFCO International

Co. ("International," and collectively, the "Defendants") in New York State Supreme Court,

County of Suffolk.  Thereafter, on July 29, 2013, IFFCO removed the action to federal court.

The Plaintiff brings a total of eight causes of action against the Defendants. In this regard, the Plaintiff asserts (1) six causes of action based on breach of contract; (2) one cause of action based on fraud and fraud in the inducement; and (3) one cause of action based on negligence.

Presently before the Court is a Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) ("Rule 12(b)(6)") motion by IFFCO seeking to dismiss the Plaintiff's Complaint in its entirety. For the reasons that follow, the Court dismisses the Plaintiff's breach of contract, fraud and negligent omission claims without prejudice with leave to file an Amended Complaint and dismisses the Plaintiff's negligence claim premised on IFFCO's negligent performance of its contractual obligations with prejudice.

## I. BACKGROUND

### A. Legal Standard for Considering Factual Allegations and Evidence Outside the Complaint

As an initial matter, before reciting the underlying factual allegations of this case, the Court notes that the Defendant IFFCO attaches several exhibits to its motion papers. These exhibits include the following: (1) a contract entered into by IFFCO and the Plaintiff under which the Plaintiff agreed to distribute certain products in the United States (the "U.S. Agreement"); (2) a contract entered into by IFFCO and the Plaintiff under which the Plaintiff agreed to distribute certain products in Mexico (the "Mexico Agreement"); (3) a screenshot capturing the results of a search conducted on the online database of the United States Patent and Trademark Office (the "USPTO"); (4) following the commencement of another, separate lawsuit in the United States District Court for the Eastern District of New York, a settlement agreement entered into by the company Tiffany (NJ) LLC, IFFCO, International and the Plaintiff (the

"Tiffany Settlement"); (5) following the execution of the Tiffany Settlement, a settlement

agreement entered into by IFFCO and the Plaintiff (the "IFFCO–UMW Settlement"); (6) a letter

invoice for a shipment from IFFCO to the Plaintiff; and (7) screenshots capturing several

searches conducted on the online databases of the USPTO.

In general, evidence outside of the Complaint may not be considered by the Court when

deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  See DiFolco v.

MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (citations and internal quotation marks

omitted) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is

merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

which might be offered in support thereof.").  In this regard, the Second Circuit has held as

follows:

> When determining the sufficiency of [a]plaintiff['s] claim for Rule
> 12(b)(6) purposes, consideration is limited to the factual
> allegations in [the]plaintiff['s][ ] complaint, . . . to documents
> attached to the complaint as an exhibit or incorporated in it by
> reference, to matters of which judicial notice may be taken, or to
> documents either in [the]plaintiff['s] possession or of which
> [the]plaintiff[ ] had knowledge and relied on in bringing suit.

Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

As the above guidance from the Second Circuit suggests, in certain circumstances, courts

may consider documents that are outside of the Complaint on a Fed. R. Civ. P. 12(b)(6) motion

to dismiss.  For example, "[w]here the claim is for breach of contract,. . . the complaint is

deemed to incorporate the alleged contract by reference because the alleged contract is integral to

the claim."  Oppenheimer & Co. v. Trans Energy, Inc., 946 F. Supp. 2d 343, 344 (S.D.N.Y.

2013) (citing Broder v. Cablevision Sys.Corp., 418 F.3d 187, 196 (2d Cir.2005)).

However, "[t]he Second Circuit has emphasized that 'a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.'" St. Michael Enterprises, LLC v. Serbia Ministry of Privitization, No. 09-CV-5147 (SLT)(MDG), 2012 WL 1117592,at *4 (E.D.N.Y. Mar. 30, 2012) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original)). In other words, "[w]here a document is not incorporated by reference, . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco, 622 F.3d at 111 (citations and internal quotation marks omitted).

In addition, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This exception may apply to public documents and other materials, as "a court may [ ] consider public documents of which the plaintiff has notice." Tiraco v. New York State Bd. of Elections, 963 F. Supp. 2d 184, 189 n.4 (E.D.N.Y. 2013) (citation and internal quotation marks omitted). Moreover, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Of note, courts are reluctant to take judicial notice of settlement agreements unless it is referenced in the plaintiff's complaint. New York Dist. Council of Carpenters Pension Fund v.

4

Forde, 939 F. Supp. 2d 268, 277 (S.D.N.Y. 2013) (excluding settlement agreement from prior action from court's consideration on Rule 12(b)(6) motion where the agreement was not referenced in the complaint, the plaintiffs did not refer to the "terms and effects" of the agreement in their allegations, and the agreement was "not integral to determining whether [the] [p]laintiffs ha[d] stated a claim in their [c]omplaint"); Shahzad v. Cnty. of Nassau, No. CV 13-2268(SJF), 2013 WL 6061650, at *4 (E.D.N.Y. Nov. 14, 2013) (declining to take judicial notice of settlement agreement from a prior action on Rule 12(b)(6) motion where the agreement was not referenced in the complaint and was not part of the judicial record in the prior action); Rolon v. Henneman, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005) (because it was referenced in the complaint, the court considered a settlement agreement on a Rule 12(b)(6) motion),aff'd, 517 F.3d 140 (2d Cir. 2008).

When a court is confronted on a Fed. R. Civ. P. 12(b)(6) motion with evidence falling outside of the exceptions recited by the Second Circuit in Brass, the court must either exclude the evidence or convert the motion to dismiss to one for summary judgment pursuant to Fed. R. Civ. P. 12(d). See St. Michael Enterprises, 2012 WL 1117592, at *4; Chambers, 282 F.3d at 152.

In the Court's view, the U.S. Agreement is incorporated by reference in the Plaintiff's Complaint. (Compl., ¶¶ 9, 12, 15.) Further, the Court finds that the Mexico Agreement is integral to the Complaint, and is thus deemed to be incorporated by reference in the Complaint. Oppenheimer & Co., 946 F. Supp. 2d at 344. In addition, the Court takes judicial notice of the screenshots of the USPTO online databases, as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201, and are "public documents of which the [P]laintiff ha[d] notice." Tiraco, 963 F. Supp. 2d at 189 n.4.

However, the Court declines to consider the Tiffany Settlement and the IFFCO–UMW Settlement while ruling on the pending Rule 12(b)(6) motion. First, the Plaintiff's Complaint does not refer to either settlement. Brass, 987 F.2d at 150. In fact, the Complaint contains no references to any litigation with Tiffany (NJ) LLC. Second, the Court cannot take judicial notice of the Tiffany Settlement or the IFFCO-UMW Settlement, because neither are public documents, as they were never filed with another court. Tiraco, 963 F. Supp. 2d at 189 n.4; Global Network Commc'ns, Inc., 458 F.3d at 157. Third, there is no evidence that the Plaintiff "relied on" these documents "in bringing suit." Brass, 987 F.2d at 150.

Accordingly, the Court will not consider the Tiffany Settlement or the IFFCO-UMV Settlement at this stage of the litigation. For substantially similar reasons, the Court will also not consider the letter invoice for a shipment from IFFCO to the Plaintiff, as it does not appear that invoice is incorporated by reference in the Complaint, was relied on by the Plaintiff in commencing this action or a public document of which the Court can take judicial notice.

With this in mind, the Court draws the following facts from the Plaintiff's Complaint and the parties' exhibits, excluding the Tiffany Settlement, the IFFCO–UMW Settlement and the letter invoice. The Court construes the facts in a light most favorable to the Plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

## B.  Underlying Factual Allegations

### 1.  The Parties

The Plaintiff is incorporated in the State of New York and is a wholesale distributor that sells food products and other goods to retail stores in both the United States and internationally. (Compl., ¶¶1, 8, 22, 49.)  The Defendant IFFCO is incorporated in the State of Georgia.  (Id., ¶

2.)  IFFCO imports, manufactures and sells cookies, biscuits, wafers and other snack products in the United States, as well as in other countries.  (Id., ¶¶ 3, 22, 49.) The Defendant International is a United Arab Emirates corporation, and it manufactures, sells and exports cookies, biscuits, wafers and other snack products.  (Id., ¶ 4.)  UMW alleges that IFFCO is a subsidiary or affiliate of International.  (Id., ¶ 7.)

## 2. The U.S. Agreement

On or about January 19, 2011, IFFCO and the Plaintiff entered into the U.S. Agreement, under which the Plaintiff agreed to distribute certain snack products in the United States. (Compl., ¶ 9; Gerecci Dec., Exh. A,, ¶ 1.)  These snack products were manufactured by IFFCO or International and used the brand name "Tiffany" (the "IFFCO Tiffany products").  (Compl., ¶ 9; Gerecci Dec., Exh. A,, ¶ 1.)  In this regard, the U.S. Agreement provided that the Plaintiff would distribute the following IFFCO Tiffany products: "Tiffany Break"; "Tiffany Wafers"; and "Tiffany Biscuits (Cookies)."  (Compl., ¶¶ 10–11; Gerecci Dec., Exh. A,, ¶ 1.)

Pursuant to the U.S. Agreement, the Plaintiff was required to promote the IFFCO Tiffany products at trade shows and supply them to specified retailers.  (Compl., ¶¶ 10–11, 13; Gerecci Dec., Exh. A, ¶¶ 3–4.)  However, before proceeding with any promotional activities, the Plaintiff first had to obtain prior written approval from IFFCO, and "[e]xpenses for the promotions" were to be "agreed upon in writing jointly" by IFFCO and the Plaintiff.  (Gerecci Dec. Exh.. A, ¶ 4.) The U.S. Agreement stated that the Plaintiff would engage in a "promotional period" lasting twelve months, which would begin on the date of the first shipment from International to the Plaintiff.  (Compl., ¶ 12; Gerecci Dec., Exh. A,, ¶ 2.)  The U.S. Agreement also contained an indemnification provision, under which the Plaintiff agreed to indemnify IFFCO against any

claims or damages resulting from the Plaintiff's marketing and sale of the IFFCO Tiffany products. (Gerecci Dec., Exh. A, ¶ 5.)

Further, the U.S. Agreement stated, without any qualification, that IFFCO may withdraw from the U.S. Agreement upon the issuance of a thirty-day notice. (Id., ¶ 7.) In the event the U.S. Agreement was terminated or expired, the Plaintiff was not "entitled [to] any compensation for any indirect or consequential loss or damages arising out of . . . [said] termination or expiration." (Id.)

Despite entering into the U.S. Agreement, IFFCO did not own a trademark in the United States for the name "Tiffany," nor did International. (Compl., ¶ 17.) According to the Plaintiff, both the Defendants knew that the name "Tiffany" was a registered trademark in the United States, but they did not inform the Plaintiff that they "had no right to use the Tiffany name in the United States" when the U.S. Agreement was formed. (Id., ¶¶ 16, 21, 73, 99.) The Plaintiff claims that it relied on the Defendants to provide it with "all relevant information about [the] Defendants' Tiffany range of branded products, including advising [the Plaintiff] of any problems Defendant [sic] had with the ownership of the brand names it used for its products." (Id., ¶ 77.) The Plaintiff further claims that it would not have made "any contractual arrangements with [the] Defendant[s]" if it had been told that neither Defendant owned the right to the "Tiffany" name. (Id., ¶ 78.)

After January 19, 2011, the Plaintiff began performance of the U.S. Agreement by purchasing and promoting the IFFCO Tiffany products in the United States. (Id., ¶¶ 15, 22–25.) In this regard, on or about January 31, 2011, the Plaintiff began ordering shipments from IFFCO. (Kressel Dec., Exh. 1.) The Plaintiff also promoted the IFFCO Tiffany products to the chain

8

retailer Dollar Tree, among other stores.  (Compl., ¶ 25.)  However, Dollar Tree refused to buy branded products which did not have trademark protection. (Id., ¶ 26.)  Accordingly, on March 2, 2012, the Plaintiff attempted to trademark the name "Tiffany" in the United States by filing a trademark application with the USPTO. (Id., ¶ 27; Gerecci Dec. Exh. C.)  The Plaintiff intended to transfer the "Tiffany" trademark to International, and billed IFFCO for the costs of applying for the trademark.  (Compl., ¶ 31.)

On March 23, 2012, the Plaintiff received a letter from counsel for Tiffany (NJ) LLC advising that Tiffany (NJ) LLC owned the "Tiffany" name as a registered trademark, which the Plaintiff determined to be true. (Id., ¶¶ 28, 30.)  Thereafter, the Plaintiff discovered that on May 20, 2008, International had applied for a trademark registration for "IFFCO Tiffany" at the USPTO. (Id., ¶¶ 18, 29; Kressel Dec., Exh. 2.)  This application had been opposed by Tiffany (NJ) LLC.  (Compl.,¶¶ 19, 29; Kressel Dec., Exh. 2.)  As such, on September 18, 2009, International had withdrawn its trademark application with the USPTO, and on October 22, 2009, the trademark application had been officially abandoned or terminated.  (Compl., ¶¶ 20, 29; Kressel Dec., Exh. 2.)

The Plaintiff alleges that the "Defendants made repeated attempts to obtain a trademark for the name Tiffany to be associated with its [sic] products."  (Compl., ¶¶ 72, 99; see also Kressel Dec., Exh. 2, showing a trademark application for "IFFCO Tiffany" by International as early as September 5, 2007.)  The Plaintiff further alleges that the Defendants never informed the Plaintiff that they had attempted and failed to trademark the name "Tiffany."  (Compl., ¶ 99.)

On September 17, 2012, after the Plaintiff learned that Tiffany (NJ) LLC owned the "Tiffany" trademark, the Plaintiff abandoned its trademark application with the USPTO.

(Compl., ¶ 32; Gerecci Dec., Exh. C.)  The Plaintiff claims that once it determined that Tiffany (NJ) LLC owned the "Tiffany" trademark, it was "unable" to continue to sell or promote IFFCO Tiffany products in the United States.  (Compl., ¶ 33.)

In November of 2012, the "Defendants cancelled their contractual arrangements" with the Plaintiff.  (Id., ¶ 34.)  Before the Defendants terminated the U.S. Agreement, the Plaintiff alleges that it had performed all it was required to do under the contract.  (Id., ¶ 35.)  In addition, the Plaintiff incurred various costs in distributing and promoting IFFCO Tiffany products, such as the costs of purchasing products, storing products in warehouses, participating in trade shows and hiring brokers.  (Id., ¶¶ 15, 23, 37–44.)  According to the Plaintiff, it would not have spent this money if the Defendants had informed it that they did not own the "Tiffany" trademark in the United States.  (Id., ¶¶ 76, 78.)  Further, the Plaintiff's United States customers are allegedly demanding reimbursement for unsellable IFFCO Tiffany products that they bought from the Plaintiff.  (Id., ¶¶ 37, 39.)  In addition, Dollar Tree "has refused to engage in business" with the Plaintiff.  (Id., ¶ 48.)

### 3. The Mexico Agreement

Beginning on or after January 19, 2011, the Plaintiff began promoting IFFCO Tiffany products in Mexico.  (Id., ¶¶ 22, 49.)  Approximately six months later, on July 12, 2011, IFFCO and the Plaintiff entered into the Mexico Agreement, under which the Plaintiff agreed to distribute the following IFFCO Tiffany products in Mexico: "Tiffany Break" and "Tiffany Delight."  (Gerecci Dec., Exh. B, ¶ 1.  )The Mexico Agreement specified a "provisional period" of six months beginning from the date of the first shipment of IFFCO Tiffany products to Mexico.  (Id., ¶ 2.)  The Mexico Agreement could be "withdrawn by [IFFCO] upon issuance of a

one month notice," subject to IFFCO fulfilling purchase orders placed by the Plaintiff before such notice, and with the condition that IFFCO would not supply IFFCO Tiffany products to the customers specified in the Mexico Agreement for six months after the withdrawal of the Mexico Agreement. (Id., ¶ 4.) The Plaintiff was not "entitled any compensation for any indirect or consequential loss or damages arising out of . . . the termination or expiration" of the Mexico Agreement. (Id.)

The Plaintiff marketed IFFCO Tiffany products to a large chain in Mexico called OXXO, which expressed interest in purchasing such products. (Compl., ¶¶ 50, 84.) OXXO requested information about IFFCO Tiffany products, including price. (Id., ¶¶ 50, 85.) However, when the Plaintiff asked the Defendants for this information, they did not provide it. (Id., ¶¶ 50, 85.) In November of 2012, the Defendants terminated the contract with the Plaintiff to sell in Mexico. (Id., ¶ 87.) The Plaintiff incurred various costs promoting IFFCO Tiffany products in Mexico, including costs for trade shows, warehouse storage, and transportation of products. (Id., ¶¶ 41–42, 49, 90.)

### 4. Allegations Common to Both the U.S. Agreement and the Mexico Agreement

The Court pauses here to collectively discuss in further detail the U.S. Agreement and the Mexico Agreement, as the Plaintiff raises identical allegations pertaining to both Agreements. In this regard, the Plaintiff alleges that one of the Defendants promised to assist the Plaintiff in promoting IFFCO Tiffany products in the United States and Mexico, but does not clarify as to which of the Defendants. (Id., ¶ 93.) This assistance was to include timely shipments of products, proper English-language packaging, packaging without spelling errors and providing product information. (Id., ¶¶ 94–97.) Instead, the Plaintiff alleges that the Defendants failed to

deliver products to the Plaintiff on time. (Id., ¶ 98.) The Complaint does not specify whether delays occurred under the U.S. Agreement, the Mexico Agreement or both.

In addition, the Plaintiff claims that the Defendants did not supply requested product information "such as ingredients." (Id.) Again, the Complaint does not indicate if this alleged failure on the part of the Defendants occurred under both Agreements or only under one of the Agreements. Further, apparently the Defendants used Arabic-language packaging instead of English-language packaging for products to be sold in the United States, and made spelling and grammatical errors in Spanish-language packaging for products to be sold in Mexico. (Id.)

## II. DISCUSSION

### A. Procedural Issues

#### 1. Whether International Must Be Served with Process

Since this case has been removed from state court, the Fed. R. Civ. P. now applies. Fed. R. Civ. P. 81(c)(1). Generally,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R. Civ. P. 4(m) ("Rule 4(m)"). "Moreover, Rule 4(m)'s 120-day period for service begins to run on the date of removal." G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999) (citations and internal quotation marks omitted).

However, Rule 4(m) contains an exception under which the rule does not apply to service in a foreign country on a foreign corporation. See Fed. R. Civ. P. 4(f),(h)(2),(m); Aqua Shield,

12

Inc. v. Inter Pool Cover Team, No. 05 CV 4880(CBA), 2007 WL 4326793, at *2 (E.D.N.Y. Dec. 7, 2007).  Nevertheless,

> [t]he [ ] Second Circuit has made it clear, [ ] that the "foreign country exception to the 120-day period for service is simply inapplicable where [the] Plaintiff never attempted to serve process in a foreign country under subdivisions (f) or (j)(1); the 120-day time limit imposed by Rule 4 . . . seems therefore perfectly proper."

D. Klein & Son, Inc. v. Good Decision, Inc., No. 98 Civ. 4083(JFK), 1999 WL 349932, at *1 (S.D.N.Y. May 28, 1999) (internal alterations omitted) (citing Montalbano v. Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir.1985)); see also Yellowave Corp. v. Mana, No. 00 CIV. 2267 SAS, 2000 WL 1508249, at *2 (S.D.N.Y. Oct. 11, 2000).

In this case, as stated above, on June 14, 2013, the Plaintiff initiated this civil action against the Defendants by filing a complaint in the Supreme Court of the State of New York, County of Suffolk.  (Notice of Removal, ¶ 1.)  The Plaintiff served process on IFFCO on July 3, 2013 and the case was removed by IFFCO to this Court on July 29, 2013.  However, it appears that, to date, International has not yet been served with process.  (Notice of Removal, ¶ 7.)

As an initial matter, the Court notes that according to the Plaintiff, IFFCO is a subsidiary or affiliate of International.  (Compl., ¶ 7.)  Nevertheless, even assuming that International is the parent of IFFCO, the Plaintiff was still required to serve process separately on International in order to make International a party to this action.  See Giar v. Centea, a Div. of KBC Bank, NV, No. 02 Civ. 7916(LLS), 2003 WL 1900836, at *2 (S.D.N.Y. Apr. 16, 2003), aff'd sub nom., 86 F. App'x 461 (2d Cir. 2004) (quoting In re Crespo, 475 N.Y.S.2d 319, 323 (N.Y. Sup. Ct. 1984)) ("It is hornbook law that service of process on a subsidiary does not constitute service on a

13

parent corporation, nor does service on a parent constitute service on a subsidiary.").  Indeed, the only way that service on IFFCO may qualify as service on International is if IFFCO is either (1) an agent of International or (2) a "mere department" of International.  See Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998); Bhasin & Sons, Inc. v. Amco Ins. Co., No. 12-CV-5248 (ADS)(ETB), 2013 WL 3810521, at *7–8 (E.D.N.Y. July 22, 2013) (Spatt, J.).

Accordingly, the Court will grant the Plaintiff leave to submit supplemental briefing to the Court demonstrating that IFFCO is either an agent of International or a department of International.  If the Plaintiff fails to make such a demonstration, then Fed. R. Civ. P. 4(m) applies.  In this regard, the date of removal was July 29, 2013 and more than 120 days have passed since then.  However, it appears that International has not been served with process. Moreover, although International is a foreign corporation, the Plaintiff has failed to establish that it has even attempted to serve International so that Rule 4(m)'s exception would apply.  Thus, unless the Plaintiff can show good cause for its failure to serve process on International, pursuant to Rule 4(m), the Court "must dismiss the action without prejudice against [International] or order that service be made within a specified time."  Fed.R. Civ. P. 4(m).

The Court notes that "[i]n determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (citations omitted).  "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control."  Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (citations and internal quotation marks omitted). In addition,

[f]actors to be considered in [deciding whether to grant a discretionary extension even in the absence of good cause] are: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

Carroll v. Certified Moving & Storage, Co., No. 04 CV 4446ARR, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (citations and internal quotation marks omitted).

In sum, the Court grants the Plaintiff twenty days from the date of this Order to provide supplemental briefing to the Court on the following issues: (1) whether IFFCO is either an agent or department of International; (2) whether there is good cause for why International has not been served process, including whether the Plaintiff has made attempts to serve International, thereby triggering Rule 4(m)'s exception for foreign corporations; and (3) whether this Court should grant a discretionary time extension for the Plaintiff to serve process on International. IFFCO's opposition, if any, will be due within twenty days following the Plaintiff's submission, and the Plaintiff's reply, if any, will be due within one week following the submission of IFFCO's opposition.

If the Court does not receive supplemental briefing from the Plaintiff, or if the reasons proffered by the Plaintiff are insufficient to warrant the Court granting the Plaintiff additional time to serve process on International, then the Court will dismiss the action without prejudice against International. In addition, the Court notes that in light of this ruling, the Court declines to address whether the Plaintiff has stated a claim as against the Defendant International at this

juncture, and shall only consider whether the Plaintiff's claims survive under Fed. R. Civ. P. 12(b)(6) as to the Defendant IFFCO.

### 2. Whether Removal Was Proper

On July 29, 2013—within thirty (30) days of service from the Plaintiff—IFFCO removed the civil action to this Court pursuant to 28 U.S.C. § 1441. This Court has original jurisdiction based on diversity of citizenship as defined in 28 U.S.C. § 1332. Complete diversity of citizenship exists among the parties in this action, and the amount in controversy exceeds $75,000.00. 28 U.S.C.A. §§ 1332(a),(c) (West 2014).

However, International has not consented to removal. Generally, under the rule of unanimity, all defendants to an action are required to consent to removal in order for removal to be proper. See Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield, No. 13-cv-1138 (JFB)(WDW), 2014 WL 1057332, at *3 (E.D.N.Y. Mar. 19, 2014) (citations and internal quotation marks omitted) ("[I]n cases with multiple defendants, the rule of unanimity requires that all named defendants over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper."). Nevertheless, an exception is made where, as here, one of the defendants has not been served process, and thus, has not been joined in the action. See id. at *1 ("It is well settled that one of the exceptions to the unanimity rule is where the non-joining defendants had not been served at the time the action was removed. . . ."). Accordingly, the Court finds IFFCO's removal of this action was proper.

### B. Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." Bell Atl. Corp. v. Twombly,550 U.S. 544, 570,127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Fed. R. Civ. P. 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79,129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal,556 U.S. at 679, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118,110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp.,275 F.3d 191, 198 (2d Cir. 2001) (citation omitted).

## C.  Choice of Law for Contract Claims

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state."

Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citation

omitted).  "Under the law of New York, the forum state, the first step in a choice of law analysis

is to determine whether an actual conflict exists between the laws of the jurisdictions involved."

Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012)

(citing In re Allstate Ins. Co. (Stolarz),81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d

936, 937 (1993)).  "In the absence of substantive difference [between the laws of jurisdictions

involved], however, a New York court will dispense with choice of law analysis; and if New

York law is among the relevant choices, New York courts are free to apply it."  Int'l Bus.

Machines, 363 F.3d at 143.

If there is a substantive difference between New York law and the law of the other

jurisdiction related to the action, New York courts apply "center of gravity" or "grouping of

contacts" analysis to determine choice of law in contract cases.  See In re Midland Ins. Co., 16

N.Y.3d 536, 543, 923 N.Y.S.2d 396, 400–01, 947 N.E.2d 1174, 1178–79 (2011); Zurich Ins. Co.

v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 612, 642 N.E.2d

1065, 1068 (1994); Int'l Bus. Machines, 363 F.3d at 143.  "The purpose of grouping contacts is

to establish which State has the most significant relationship to the transaction and the parties."

In re Midland, 16 N.Y.3d at 543–44, 923 N.Y.S.2d at 401, 947 N.E.2d at 1179 (citations and

internal quotation marks omitted).

"The traditional choice of law factors, the places of contracting and performance, are

given the heaviest weight in this analysis."  Brink's Ltd. v. S. African Airways, 93 F.3d 1022,

1031 (2d Cir. 1996) (citation omitted).  However, "[a]long with 'the traditionally determinative choice of law factor of the place of contracting,' the New York Court of Appeals has endorsed the following factors . . . : 'the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.'" Schwartz v. Liberty Mut.Ins. Co., 539 F.3d 135, 151–52 (2d Cir. 2008) (citing Zurich, 84 N.Y.2d at 317, 618 N.Y.S.2d at 612, 642 N.E.2d at 1068).

Further, sometimes under "grouping of contacts" analysis,

> the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered.  Theoretically, in a proper case, a foreign State's sufficiently compelling public policy could preclude an application of New York law otherwise indicated by the grouping of contacts analysis, particularly where New York's policy is weak or uncertain.

Zurich, 84 N.Y.2d at 319, 618 N.Y.S.2d at 613, 642 N.E.2d at 1069 (citations and internal quotation marks omitted).  In addition, "federal law may govern the construction of the contract to the extent the 'contracting parties use[d] terms and concepts that are firmly rooted in federal law.'" Netherby Ltd. v. Jones Apparel Grp., Inc., No. 04 Civ. 7028(GEL), 2007 WL 1041648, at *7 (S.D.N.Y. Apr. 5, 2007) (quoting Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 618 (2d Cir. 2001)).

Here, the parties refer to New York State law in their memoranda of law and do not refer to the law of the State of Georgia or United Arab Emirates law.  The parties' assumption in their briefs that New York State law governs constitutes implied consent to its application to the merits of this case.  See Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir. 2000)

(citation and internal quotation marks omitted) ("The parties' briefs assume that New York law controls this dispute, and such implied consent . . . is sufficient to establish choice of law.").

In addition, the Court's application of New York's "grouping of contacts" analysis counsels in favor of applying New York State law to this action. First, the Plaintiff's principal place of business is located in New York. (Notice of Removal, ¶ 2.) Second, as to the place of contracting, while the Complaint and relevant exhibits offer no evidence as to where the contracts were negotiated, the U.S. Agreement and the Mexico Agreement were both apparently sent to the Plaintiff's office in New York, where they were signed by the Plaintiff, suggesting the contracts were executed there. (Gerecci Dec., Exhs. A and B.) Third, the U.S. Agreement appears to have been performed in New York, as the Plaintiff placed an order to IFFCO and IFFCO Tiffany products were subsequently shipped to a warehouse in New York. (Kressel Dec. Exh. 1; Compl., ¶ 15b.) The Mexico Agreement also appears to have been performed in New York, since the Plaintiff apparently had IFFCO Tiffany products in New York, presumably shipped there by the Defendants, which it then transported to Mexico in order to promote them there. (Compl., ¶ 49.)

Thus, the above factors indicate that New York "has the most significant relationship to the transaction[s] and the parties." In re Midland, 16 N.Y.3d at 543–44, 923 N.Y.S.2d at 401, 947 N.E.2d at 1179. "Based on this [grouping of contacts] analysis, and in view of the parties' reliance on New York law, the Court will apply New York law." IBS Ketel, Ltd. v. Korea Telecom Am., Inc., No. 98CIV.4856(DC), 2000 WL 821013, at *3 (S.D.N.Y. June 22, 2000).

**D. As to the Plaintiff's Breach of Contract Claims**

In New York, to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages suffered as a result of the breach. Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir.2000). At issue here is whether the Plaintiff has pled sufficient factual allegations to satisfy the third and fourth elements.

In this case, the Plaintiff alleges that the Defendant IFFCO breached the U.S. Agreement when IFFCO "wrongfully cancelled the contractual arrangements between [the] Plaintiff and [the] Defendant." (Compl.,¶ 61.) In similar fashion, the Plaintiff also alleges that IFFCO breached the Mexico Agreement by "wrongfully terminat[ing] [the] Plaintiff's contractual relationship with them on or about November 2012." (Compl.,¶ 87.)

However, the plain language of the U.S. Agreement allowed IFFCO to terminate at will. Indeed, it stated as follows: "[the U.S. Agreement] can be withdrawn by IFFCO [ ] upon issuance of a thirty day notice." (Gerecci Dec., Exh. A, ¶7.) The termination clause in the Mexico Agreement was essentially the same as that in the U.S. Agreement, permitting IFFCO to terminate at will so long as it provided "one month notice" prior to the termination. (Gerecci Dec., Exh. B, ¶ 4.)

Under New York law, "when a contract is expressly made terminable at will upon notice by either party, a party's termination of the contract cannot give rise to a cause of action for breach of contract on the theory that the party has failed to perform its obligations under the contract." BBS Power Mod, Inc. v. Prestolite Elec., Inc., 71 F. Supp. 2d 194, 200 (W.D.N.Y.

1999) (citations omitted). On the other hand, "failure to observe the notice requirements of a termination clause will render an attempted termination invalid." Id. (citations omitted).

As indicated above, under the U.S. Agreement and the Mexico Agreement, IFFCO was required to give the Plaintiff either "a thirty day notice" or "one month notice" before exercising its right to terminate the Agreements. (Gerecci Dec., Exh. A, ¶ 7, Exh. B, ¶ 4.) The Plaintiff claims that IFFCO terminated the Agreements at some time in November of 2012. (Compl., ¶¶ 34, 87.) However, the Plaintiff does not allege how IFFCO notified the Plaintiff of its termination of the Agreements, or whether IFFCO gave the required notice. As such, in its discretion, the Court grants the Plaintiff leave, within twenty days of the date of this Order, to submit an Amended Complaint containing additional factual allegations addressing whether IFFCO complied with the notice requirement. The Court advises the Plaintiff that failure to file an Amended Complaint may result in the dismissal of its breach of contract claim premised on this ground pursuant to Fed. R. Civ. P. 12(b)(6).

Further, the Plaintiff faces another hurdle to its claim for damages related to IFFCO's termination of the U.S. Agreement and the Mexico Agreement. In this regard, both Agreements contain a disclaimer for damages related to termination of the contract, which stipulate that Plaintiff was not "entitled any compensation for any indirect or consequential loss or damages arising out of . . . the termination or expiration" of the agreement. (Gerecci Dec. Exh. A, ¶ 7; Exh.B, ¶ 4.) Notably, these clauses only include damages related to the termination of the contracts, and thus, do not preclude the Plaintiff receiving an award of damages based on other actions performed by IFFCO under the Agreements.

Under New York State law, disclaimers of liability, also referred to as exculpatory provisions, have been held to be valid, as follows:

> In the absence of a contravening public policy, exculpatory provisions in a contract, purporting to insulate one of the parties from liability resulting from that party's own negligence, although disfavored by the law and closely scrutinized by the courts, generally are enforced, subject however to various qualifications. Where the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence, the agreement will be enforced. Such an agreement will be viewed as wholly void, however, where it purports to grant exemption from liability for willful or grossly negligent acts or where a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual.

Lago v. Krollage, 78 N.Y.2d 95, 99–100, 571 N.Y.S.2d 689, 692, 575 N.E.2d 107, 110 (1991) (citations omitted). Of relevance here, "[w]here . . . parties have negotiated an exculpatory agreement at arm's length, a party will not be liable for its own negligence even if the exculpatory agreement is drawn in broad and sweeping language." Strauss v. Stoneledge Farms, Inc., 684 N.Y.S.2d 387, 388 (N.Y. App. Div. 1998) (citations omitted).

Since the Plaintiff and IFFCO negotiated the Agreements at arm's length and are sophisticated parties, the Court analyzes the validity of the subject disclaimers with less scrutiny than it would if one of the parties was unsophisticated. Strauss, 684 N.Y.S.2d at 388. Here, the Court does not find that "a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual." Lago, 78 N.Y.2d at 100, 571 N.Y.S.2d at 692, 575 N.E.2d at 110. As such, the Court views the disclaimer provisions in both the U.S. Agreement and the Mexico Agreement as valid under New York State law, but only insofar as they disclaim IFFCO's liability for negligent acts, rather than

"willful or grossly negligent acts."  Id.  In other words, if either of the Agreements was terminated as a result of gross negligence or intentional misconduct on the part of IFFCO, then the disclaimers at issue would be unenforceable.  Id.

Accordingly, the Court grants the Plaintiff leave to re-plead in its Amended Complaint whether IFFCO terminated the Agreements as a result of gross negligence or intentional misconduct.  Otherwise, even if the Plaintiff is able to assert facts that the Defendant failed to comply with the Agreements' notice requirements, the subject disclaimer provisions will nevertheless prevent the Plaintiff from recovering damages based on IFFCO's termination of the Agreements.

In addition to its breach of contract claims premised on IFFCO's termination of the Agreements, the Plaintiff also alleges that IFFCO committed a breach of contract by failing to deliver products on time.  However, the Complaint does not specify whether delays occurred under the U.S. Agreement or under the Mexico Agreement.  (Compl., ¶ 98.)  Nevertheless, the Court will assume for the purpose of resolving this motion, that the delays constituted alleged breaches of the terms of both the U.S. Agreement and the Mexico Agreement.

Generally, "[d]elays . . . are actionable if they are not within the contemplation of the parties at the time the contract is made, and that contemplation involves only such delays as are reasonably foreseeable, arise from the [party's] work itself during performance, or others specifically mentioned in the contract."  Peckham Rd. Co. v. State, 300 N.Y.S.2d 174, 176 (N.Y. App. Div. 1969) (citations omitted), aff'd, 28 N.Y.2d 734, 321 N.Y.S.2d 117, 269 N.E.2d 826 (1971).  Here, the Plaintiff does not allege that IFFCO's delay in delivering products was beyond "the contemplation of the parties," such as not being "reasonably foreseeable."  Without such an

allegation, the Plaintiff has not adequately stated a claim for breach based on delay. Nevertheless, as the Court has already granted the Plaintiff permission to file an Amended Complaint, the Court grants the Plaintiff leave to also re-plead this issue. Further, the Court instructs the Plaintiff to specify whether the delays allegedly occurred under the U.S. Agreement, the Mexico Agreement or both.

The Plaintiff also claims that IFFCO did not supply requested product information "such as ingredients," but again, the Complaint does not indicate whether this failure occurred under the U.S. Agreement, the Mexico Agreement or both. (Compl., ¶ 98.) Moreover, the Plaintiff alleges that IFFCO (1) used Arabic-language packaging instead of English for IFFCO Tiffany products to be sold in the United States; (2) refused to provide product information that the Plaintiff needed in marketing the IFFCO Tiffany Products to the chain OXXO in Mexico, such as price; and (3) provided improper product labeling with misspelling and grammatical errors in Spanish-language packaging for IFFOC Tiffany products to be sold in Mexico. (Compl., ¶ 98.)

The Court finds that these allegations by the Plaintiff concerning IFFCO's refusal to provide necessary product information and proper product labeling could potentially give rise to a claim of breach of contract based on the implied duty of good faith and fair dealing. In this regard, in addition to the express terms of a contract, New York State law provides that every contract contains an implied covenant of good faith and fair dealing. See Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006). This covenant "includes an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." Kader v. Paper Software Inc., 111 F.3d 337, 342 (2d Cir. 1997) (emphasis in original) (citations and internal quotation marks omitted).

In the Court's view, IFFCO's alleged refusal to provide product information to the Plaintiff would have prevented the Plaintiff from carrying out its part of the Agreements with respect to its obligation to promote the IFFCO Tiffany Products. The Court also finds that, if true, the Defendants' improper product labeling would have prevented the Plaintiff from carrying out the Agreements, because (1) United States retail chains would have been unlikely to want to buy products from the Plaintiff that had Arabic language labeling and (2) Mexican retail chains would have probably have been hesitant to purchase products containing spelling and grammatically errors.

With that being said, the Plaintiff's Complaint does not allege that IFFCO "intentionally and purposely" tried to prevent the Plaintiff from carrying out the Agreements, which is a necessary element for stating a breach of contract based on the implied duty of good faith and fair dealing. As a consequence, the Court finds that at this stage, the Plaintiff has not yet adequately made out a breach of contract claim based on either the improper product labeling or the failure to provide certain product information. Nevertheless, again in its discretion, the Court grants the Plaintiff leave to re-plead these claims so as to address the issues raised by the Court. The Court also instructs the Plaintiff to specify whether the refusal to provide product information "such as ingredients" allegedly occurred under the U.S. Agreement, the Mexico Agreement or both.

**E. As to the Plaintiff's Fraud Claim**

Under New York law, a claim of fraud consists of five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the

plaintiff."  Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citation omitted).  If

a claim of fraud is based on an omission of fact, a plaintiff must prove an additional element—

that the defendant had a duty to disclose the omitted information.  See In re New York Trap

Rock Corp., 42 F.3d 747, 754 (2d Cir. 1994); TVT Records v. Island Def Jam Music Grp., 412

F.3d 82, 90–91 (2d Cir. 2005); Banque Arabe et Internationale D'Investissement v. Maryland

Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995).

> As to the duty to disclose:

>> New York recognizes a duty by a party to a business transaction to
>> speak in three situations: first, where the party has made a partial
>> or ambiguous statement, on the theory that once a party has
>> undertaken to mention a relevant fact to the other party it cannot
>> give only half of the truth; second, when the parties stand in a
>> fiduciary or confidential relationship with each other; and third,
>> where one party possesses superior knowledge, not readily
>> available to the other, and knows that the other is acting on the
>> basis of mistaken knowledge.

Brass, 987 F.2d at 150 (citations and internal quotation marks omitted).  In addition, "'[w]here

parties deal at arms-length in a commercial transaction, no relation of confidence or trust

sufficient to find the existence of a fiduciary relationship will arise absent extraordinary

circumstances.'"  Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d 46, 57 (E.D.N.Y. 2006)

(alteration original) (quoting Nat'l Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 679

(S.D.N.Y. 1991), aff'd sub nom. Yaeger v. Nat'l Westminster, 962 F.2d 1 (2d Cir. 1992)).

> In Brass, the Second Circuit explained the "superior knowledge" prong further, stating as

follows:

>> In general where a buyer has an opportunity equal to that of a
>> seller to obtain information, such information is "readily
>> available," and the buyer is expected to protect himself in a

> business transaction. Yet, in an increasing number of situations, a
> buyer is not required to conduct investigations to unearth facts and
> defects that are present, but not manifest.

Brass, 987 F.2d at 151 (citation omitted); see also PdP Parfums de Paris, S.A. v. Int'l Designer

Fragrances, Inc., 901 F. Supp. 581, 587 (E.D.N.Y. 1995) (Spatt, J.) (discussing the rule of

superior knowledge in the context of a relationship between a manufacturer and distributors).

The Brass Court went on to "observe a tendency in New York to apply the rule of 'superior

knowledge' in an array of contexts in which silence would at one time have escaped criticism."

Brass, 987 F.2d at 151(citations omitted).

 In order to allege a claim of fraud arising out of a contractual relationship, a plaintiff

must not only allege the basic elements of fraud, stated above, but must either: (i) demonstrate a

legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent

misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are

caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone,

Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted); see also

TVT Records, 412 F.3d at 91 (citations omitted) (discussing the duty to disclose in a claim of

fraud based on omission of fact and holding that "the duty to disclose must exist separately from

the duty to perform under the contract").

 In addition, a plaintiff's fraud allegations must meet the requirements of Fed. R. Civ. P.

9(b). In this regard, Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake. Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." In order "[t]o

state a claim with the required particularity, a complaint must: (1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Stevelman v. Alias Research Inc.</u>, 174 F.3d 79, 84 (2d Cir. 1999) (citations and internal quotation marks omitted).

Concerning Rule 9(b)'s "conditions of a person's mind" requirement, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." <u>Acito v. IMCERA Grp., Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995) (citation omitted). A strong inference of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Shields v. Citytrust Bancorp</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted), <u>superseded by statute as stated in</u> <u>In re Paracelsus Corp. Sec. Litig.</u>, 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998) (pointing out that the <u>Shields</u> standard for an inference of fraudulent intent was superseded as to private securities litigation).

In this case, the Court finds that the Plaintiff has failed to adequately plead the first element of fraud—a material omission of fact. <u>Crigger</u>, 443 F.3d at 234. Specifically, the Plaintiff alleges that the Defendant IFFCO did not disclose that neither it nor International had the right to the brand name "Tiffany" in the United States. (Compl., ¶¶ 21, 76, 78, 99.) However, Rule 9(b) requires the Plaintiff to state the circumstances of fraud with particularity, and the Complaint contains no allegations to meet this standard.

In this regard, while the Court recognizes that the <u>Stevelman</u> test is inapplicable here because the Plaintiff sets forth a claim of fraud by omission rather than by affirmative misrepresentation, the Court nevertheless finds that the Complaint lacks allegations with significant particularity to meet the requirements of Fed. R. Civ. P. 9(b). Indeed, "[w]here the

29

alleged fraud is premised on an omission, a plaintiff must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff." United Teamster Fund v. ManaCare Admin. Servs., LLC, 13 CIV. 6062 WHP, 2014 WL 4058070, at *7 (S.D.N.Y. Aug. 14, 2014) (quoting Solutia Inc. v. FMC Corp., 456 F. Supp. 2d 429, 449–50 (S.D.N.Y. 2006)).  Here, the Complaint does not include any details concerning which representatives of IFFCO chose not to disclose information about the "Tiffany" brand to the Plaintiff nor does it provide context for IFFCO's alleged omission referencing specific times during the contract negotiations when IFFCO's representatives could have disclosed the information about the "Tiffany" brand to the Plaintiff but did not do so.  Therefore, in its discretion, the Court grants the Plaintiff leave to re-plead particularized facts regarding the Defendants' failure to disclose.

Although the Court has determined that the Plaintiff has not stated a claim for fraud based on its failure to meet the first element, because the Court is permitting the Plaintiff to file an Amended Complaint, the Court will proceed to discuss whether the Plaintiff has satisfied the remaining elements for the purpose of surviving a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  In this regard, the Court finds that the Plaintiff's Complaint satisfies the second element of a fraud claim—that is, that the omission was "made by [the] [D]efendant [IFFCO] with knowledge of its falsity." Crigger, 443 F.3d at 234.  According to the Complaint, although IFFCO knew that neither it nor International had a trademark right to the name "Tiffany," it nevertheless failed to inform the Plaintiff of this fact during the negotiations.  (Compl., ¶¶ 16–20, 73.)  This allegation is sufficient to satisfy Rule 9(b), which states that "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b).

As to the third element under <u>Crigger</u>, the Plaintiff does not explicitly allege that IFFCO acted with an intent to defraud. However, in the Court's view, the Complaint may be read to implicitly allege that element. Of relevance here, in alleging intent to defraud, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent," <u>Acito</u>, 47 F.3d at 52, "either (a) by alleging facts to show that [the] defendant[ ] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness," <u>Shields</u>, 25 F.3d at 1128.

Here, the Complaint states that "notwithstanding [that the Defendant IFFCO knew it and International had no right to the brand name "Tiffany" in the United States], [IFFCO] actively encouraged [the] Plaintiff to purchase its products and to promote said products in both the United States and in Mexico." (Compl., ¶ 74.) In the Court's view, although the Complaint does not contain allegations suggesting that IFFCO possessed motive to commit fraud, such as whether the IFFCO profited by alleging defrauding the Plaintiff, the Complaint adequately alleges strong circumstantial factual assertions which indicate conscious misbehavior. Indeed, if true, the allegations that IFFCO knew neither it nor International had a right to the "Tiffany" name in the United States, yet still "actively encouraged" the Plaintiff to enter into a distributorship contract for IFFCO Tiffany products in the United States, would indicate conscious misbehavior on the part of IFFCO. Thus, the Court finds that the Plaintiff has adequately pled intent to defraud. <u>See, e.g.</u>, <u>Dessert Beauty, Inc. v. Platinum Funding Corp.</u>, 06 CIV. 2279 (SAS), 2006 WL 3780902, at *7 (S.D.N.Y. Dec. 26, 2006).

With respect to the fourth element of fraud, reasonable reliance on the part of the Plaintiff, the Plaintiff alleges that it relied on IFFCO "to provide [the] Plaintiff with all relevant

information about [the] [ ] [IFFCO Tiffany products], includ[ing] advising [the] Plaintiff of any problems [the] Defendant [IFFCO] had with the ownership of the brand names it used for its products." (Compl., ¶ 77.) However, the Plaintiff makes no allegation that it was reasonable to rely on IFFCO to provide "all relevant information" about the IFFCO Tiffany products. Absent such an allegation, the Complaint does not adequately allege the fourth element of fraud. See Marciano v. DCH Auto Grp., 11-CV-9635 KMK, 2014 WL 1612976, at *7 (S.D.N.Y. Mar. 31, 2014) ("To state a claim for fraud, [a] [p]laintiff must establish that it was reasonable for her to rely on [the] [d]efendants' alleged misrepresentation."). The Court grants the Plaintiff leave to re-plead in its Amended Complaint whether the Plaintiff's reliance on the Defendants was reasonable.

Concerning the fifth element, the Court finds that the Plaintiff adequately alleges the resulting damage to the Plaintiff. Specifically, the Plaintiff alleges that it "incurred costs and expense . . . to promote [IFFCO Tiffany products]" as a result of IFFCO's alleged fraud, which includes (1) the costs of purchasing products, storing products in warehouses, participating in trade shows and hiring brokers; (2) reimbursement demands for unsellable IFFCO Tiffany products from retail chains that purchased said products from the Plaintiff; and (3) the end of its business relationship with Dollar Tree. (Compl., ¶¶(Id., ¶¶ 15, 23, 37–44, 48, 75–79.) In the Court's view, this allegation is clearly sufficient to satisfy the fifth element of a fraud claim brought pursuant to New York State law.

Since the Plaintiff's fraud claim is based on an omission of fact, the Court must proceed to analyze whether the Plaintiff also adequately alleged that IFFCO had a duty to disclose that it and International did not have a right to the brand name "Tiffany" in the United States. In this

32

regard, first, the Plaintiff has not alleged that IFFCO made "a partial or ambiguous statement" as to the "Tiffany" trademark issue. Thus, the Plaintiff has alleged facts establishing the existence of the first situation that creates a duty to disclose, which involves one party making a partial or ambiguous statement to another party, thereby only providing "half of the truth" about a relevant fact. See Brass, 987 F.2d at 151. The Plaintiff has also not alleged the second scenario in which a duty to disclose exists—that is, the Plaintiff does not contend that a fiduciary relationship existed between the Plaintiff and IFFCO.

As to the third circumstance which creates a duty to disclose—the superior knowledge rule—the Plaintiff has failed to allege that the information regarding the trademark issues with the IFFCO Tiffany products was "not readily available" to the Plaintiff. Brass, 987 F.2d at 150. Indeed, before executing the U.S. Agreement with IFFCO, the Plaintiff could have accessed the USPTO website and easily discovered that IFFCO and International did not have the rights to the "Tiffany" name in the United States.

Nonetheless, it is reasonable to assume that a New York court would find that the circumstances presented by this case fall within the superior knowledge rule. This is because, "in an increasing number of situations," courts have held that "a buyer is not required to conduct investigations to unearth facts and defects that are present, but not manifest." Id. at 151.

However, assuming the Plaintiff was not required to conduct an investigation concerning the trademark rights to the brand name "Tiffany" in the United States, the Court finds that the Plaintiff has failed to allege sufficient facts indicating that IFFCO knew that the Plaintiff was "acting on the basis of mistaken knowledge" when entering into the U.S. Agreement. Id. at 150.

Without such factual allegations, the Plaintiff cannot support its claim that IFFCO had a duty to disclose under the superior knowledge rule.  Id.

In sum, the facts alleged by the Plaintiff in her Complaint, even if true, are inadequate to establish that a duty to disclose existed.  Accordingly, in its discretion, the Court permits the Plaintiff to re-plead in its Amended Complaint the issue of whether the Defendants had a duty to disclose, under any of the three situations listed in Brass.

In the event the Plaintiff successfully re-pleads the first and fourth elements of a New York State fraud claim and that IFFCO had a duty to disclose, the Plaintiff must also allege facts that establish one of the three Bridgestone elements, discussed above, as its fraud claim arises from its contractual relationship with IFFCO.  Bridgestone/Firestone, Inc., 98 F.3d at 20.  In this regard, the Plaintiff can satisfy the first Bridgestone element by asserting facts that (1) establish that IFFCO had a duty to disclose separate from its "duty to perform under the contract," TVT Records, 412 F.3d at 91; or (2) demonstrate that IFFCO had some other "legal duty separate from the duty to perform under the contract," Bridgestone/Firestone, Inc., 98 F.3d at 20.

In its opposition to IFFCO's Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Plaintiff claims that IFFCO had a legal duty based on "circumstances extraneous from the terms of the contract" and had a legal duty to disclose "so as not to expose [the] Plaintiff to violations of federal [trademark] law."  (Pl.'s Mem. at 8–9.)  However, it appears to the Court that the Plaintiff has not alleged any facts in its Complaint supporting these arguments.

Alternatively, the Plaintiff can instead establish the second Bridgestone element by "demonstrat[ing] a fraudulent misrepresentation collateral or extraneous to the contract." Bridgestone/Firestone, Inc., 98 F.3d at 20.  In this case, the Plaintiff has failed to satisfy the

second <u>Bridgestone</u> element, because it is alleging a failure to disclose by IFFCO rather than a fraudulent misrepresentation. Further, even if a failure to disclose constituted a "fraudulent misrepresentation" for the purposes of the second <u>Bridgestone</u> element, the Plaintiff would still be required to assert facts establishing that there was a duty to disclose separate from the duty to perform under the contract, <u>TVT Records</u>, 412 F.3d at 91, which, as already stated, the Plaintiff has failed to do.

Finally, the Plaintiff may satisfy the third <u>Bridgestone</u> standard through the third element, which requires a plaintiff to "seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." <u>Bridgestone/Firestone, Inc.</u>, 98 F.3d at 20. Here, the Plaintiff only alleges damages of "costs and expense" under its fraud claim. (Compl., ¶ 75.) These damages would presumably be recoverable as contract damages if there was a breach of contract. Therefore, the Plaintiff has not adequately alleged "special damages . . . unrecoverable as contract damages" caused by the Defendants' alleged fraud.

By failing to adequately plead facts that would satisfy at least one of the three <u>Bridgestone</u> factors, the Plaintiff's fraud claim cannot survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Nevertheless, in its discretion, the Court will also give the Plaintiff an opportunity to re-plead this issue in its Amended Complaint.

**F. As to the Plaintiff's Negligence Claims**

### 1. Whether the Plaintiff has Stated a Negligence Claim Premised on the Defendant IFFCO's Performance of the U.S. Agreement and the Mexico Agreement

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury

35

proximately resulting therefrom." <u>Lerner v. Fleet Bank</u>, 459 F.3d 273, 286 (2d Cir. 2006)

(citations and internal quotation marks omitted).  New York State law provides that "[w]here the

plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant

liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its

duties under the contract; otherwise plaintiff is limited to an action in contract."  <u>Carvel Corp. v.

Noonan</u>, 350 F.3d 6, 16 (2d Cir. 2003), <u>certified question answered</u>, 3 N.Y.3d 182, 785 N.Y.S.2d

359, 818 N.E.2d 1100 (2004); <u>see also</u> <u>Bayerische Landesbank, New York Branch v. Aladdin

Capital Mgmt. LLC</u>, 692 F.3d 42, 58 (2d Cir. 2012) (citations omitted) ("Where an independent

tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same

allegedly wrongful conduct.  If, however, the basis of a party's claim is a breach of solely

contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the

contractual bargain through an action in tort, the claim is precluded as duplicative.").

     Here, the Plaintiff claims in its Complaint the following:

> [T]he Defendants were negligent in not providing [the] Plaintiff
> with timely delivery of ordered product; in not providing [the]
> Plaintiff with requested product information such as ingredients;
> that [the] Defendants were negligent in utilizing Arabic language
> packaging in goods to be sold in the United States; that the
> Defendants were negligent in providing [the] Plaintiff with
> products intended for sale in Mexico with misspelled Spanish
> words and Spanish grammatical errors.

(Compl., ¶ 98.)  In the Court's view, these factual allegations are more appropriately

characterized as supporting the breach of contract claim, and as such, the Court previously

discussed them when examining the Plaintiff's breach of contract claims.  Indeed, the Plaintiff

raises no alleged facts that would suggest that IFFCO had a tort duty independent of its

obligations under the U.S. Agreement and the Mexico Agreement. Therefore, the Court finds any negligence claim premised upon these factual allegations cannot survive a Rule 12(b)(6) motion to dismiss. See Bayerische Landesbank, New York Branch, 692 F.3d at 58; Carvel Corp., 350 F.3d at 16.

Further, the Complaint alleges that "from on or about January 19, 2011 to on or about November 2012 the Defendant [IFFCO] promised and agreed to assist [the] Plaintiff in the promotion in the United States and Mexico of [IFFCO Tiffany products]," and that this assistance would include timely delivery, provision of requested product information and proper product labeling. (Id., ¶¶ 93–97.) This "promise to assist" was simply part of IFFCO's duty to perform under the U.S. Agreement and the Mexico Agreement and it appears to the Court that IFFCO had no other independent tort duty separate from its duty to perform under the Agreements. Hence, the Court dismisses the Plaintiff's negligence claim, as it is "precluded as duplicative." Bayerische Landesbank, 692 F.3d at 58.

## 2. Whether the Plaintiff has Stated a Negligence Claim Premised on an Alleged Negligent Misrepresentation or Omission on the Part of IFFCO

Under New York law, in order to state a negligence claim premised on negligent misrepresentation or omission, a plaintiff must allege: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect [or withheld]; and (3) reasonable reliance on the information [or omission]." High Tides, LLC v. DeMichele, 931 N.Y.S.2d 377, 382–83 (N.Y. App. Div. 2011) (alteration in original) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 180, 919 N.Y.S.2d 465, 470, 944 N.E.2d 1104, 1109 (2011)). The first of these

factors can be approached in the same way as the duty to disclose was in <u>Brass</u>, which the Court previously discussed when considering the Plaintiff's fraud claims.  <u>See</u> <u>Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.</u>, 429 F. Supp. 2d 582, 609, <u>supplemented</u>, 458 F. Supp. 2d 178 (S.D.N.Y. 2006).

In the instant action, the Plaintiff alleges that IFFCO was negligent in failing to disclose that neither it nor International had any trademark rights to the name "Tiffany," and that "the name 'Tiffany' was actually owned by Tiffany (NJ) LLC" in the United States.  (Compl., ¶ 99.) While the Court recognizes that the Plaintiff's negligence claim here is based on the same set of facts as its fraud claim, the Court notes that the Plaintiff is allowed to plead in the alternative at the motion to dismiss stage of the litigation.  Indeed, pursuant to the Rules of Civil Procedure, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2); <u>see also</u> <u>In re China Valves Tech. Sec. Litig.</u>, 979 F. Supp. 2d 395, 415 (S.D.N.Y. 2013) (citation omitted) ("Pleading fraud and negligence in the alternative is permitted where plaintiffs 'draft a separable two-part complaint.'").

The analysis of this negligence omission claim parallels much of the claim for fraud, discussed above.  On the first element of negligent misrepresentation or omission requiring the existence of a duty on the part of the Defendant, as the Court has already held, the Plaintiff has not adequately pled any of the three situations in <u>Brass</u> creating a duty to disclose.  As to the second element of a negligent omission cause of action—that is, that the Defendant withheld information—the Plaintiff alleges that IFFCO did not disclose that it and International did not have the right to the brand name "Tiffany" in the United States.  (Compl., ¶¶ 21, 76, 78, 99.)

The Court finds these allegations satisfy the second element of a negligent omission claim. However, the Court finds that the Plaintiff has failed to satisfy the Fed. R. Civ. P. 9(b) heightened requirement of specificity in making these allegations.

In this regard, the Court recognizes that the Second Circuit has declined at least on one occasion to resolve whether Rule 9(b)'s pleading standard applies to a negligent misrepresentation or omission claim. See CAC Grp. Inc. v. Maxim Grp. LLC, 523 F. App'x 802, 806 (2d Cir. 2013) (deciding not to resolve whether or not Rule 9(b) applies to negligent misrepresentation claims). Nevertheless, other courts in this Circuit have applied Rule 9(b) to causes of action for negligent misrepresentation or omission. See, e.g., Boco v. Argent Mortg. Co., No. 13-CV-1165(DLI)(CLP), 2014 WL 1312101, at *6 (E.D.N.Y. Mar. 31, 2014) (applying Rule 9(b) to negligent misrepresentation claims); CAC Grp., Inc. v. Maxim Grp., LLC, No. 12 Civ. 5901(KBF), 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012) (same), aff'd, 523 F. App'x 802 (2d Cir. 2013); Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011) (same). As such, persuaded by this reasoning, the Court finds that the Plaintiff was required to satisfy Rule 9(b)'s requirements when stating its negligent omission claim. Specifically, as outlined by the Court when addressing the Plaintiff's fraud claim, the Plaintiff must assert particularized facts regarding IFFCO's failure to disclose that they had no right to the name "Tiffany" in the United States.

Lastly, the Plaintiff has failed to allege the third element of a negligent omission claim, which is reasonable reliance. As already explained above by the Court when it analyzed the Plaintiff's fraud claim, the Plaintiff only states that it relied on IFFCO's omission, but provides no factual assertions establishing that such reliance was reasonable. Therefore, the Court directs

the Plaintiff to re-plead its negligent omission claim in its Amended Complaint, so that its claim (1) satisfies the pleading requirements of Fed. R. Civ. P. 9(b) and (2) is supported by factual allegations concerning IFFCO's duty to discuss and the Plaintiff's reasonable reliance.

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED,** that the Court grants the Plaintiff twenty (20) days from the date of this Order to provide supplemental briefing to the Court on the following issues: (1) whether IFFCO is either an agent or department of International; (2) whether there is good cause for why the Defendant International has not been served with process, including whether the Plaintiff has made attempts to serve International, thereby triggering Rule 4(m)'s exception for foreign corporations; and (3) whether this Court should grant a discretionary time extension for the Plaintiff to serve process on International.  The Court further directs that the Defendant IFFCO's opposition, if any, will be due within twenty (20) days following the Plaintiff's submission, and the Plaintiff's reply, if any, will be due within one week following the submission of IFFCO's opposition.  If the Court does not receive supplemental briefing from the Plaintiff, or if the reasons proffered by the Plaintiff are insufficient to warrant the Court granting the Plaintiff additional time to serve process on International, then the Court will dismiss the action without prejudice against International; and it is further;

**ORDERED**, that the Court dismisses without prejudice the Plaintiff's breach of contract, fraud and negligent omission claims with leave to file an Amended Complaint within twenty (20) days of the date of this Order, in accordance with the Court's rulings; and it is further

**ORDERED**, that Court dismisses with prejudice the Plaintiff's negligence claim

premised on IFFCO's alleged negligent performance of the U.S. Agreement and the Mexico

Agreement.

**SO ORDERED.**
Dated: Central Islip, New York
September 15, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge