**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED MERCHANDISE WHOLESALE,
INC.,

              Plaintiff,                           **DECISION AND ORDER**
                                                   13-cv-4259 (ADS)(AYS)

            -against-

IFFCO, INC.,

              Defendant.

----------------------------------------------------------X

**APPEARANCES:**

**Kressel & Rothlein, P.C.**
*Attorneys for the Plaintiff*
684 Broadway
Massapequa, NY 11758
       By: Stephen J. Kressel, Esq., Of Counsel

**Nixon Peabody LLP**
*Attorneys for the Defendant*
437 Madison Avenue
New York, NY 10022
       By: Craig R. Tractenberg, Esq., Of Counsel

**SPATT, District Judge.**

This case arises from the decision by the Defendant IFFCO, Inc. (the "Defendant" or

"IFFCO"), a manufacturer of snack products, to terminate two agreements with the Plaintiff

United Merchandise Wholesale, Inc. (the "Plaintiff"). Under the agreements, the Plaintiff agreed

to distribute snack products manufactured by the Defendant in the United States and Mexico.

On June 14, 2013, the Plaintiff commenced this action against the Defendant and IFFCO

International Co. ("International") in the New York State Supreme Court, County of Suffolk.

The state court complaint asserted eight claims consisting of: (1) six causes of action for breach of contract; (2) one cause of action for fraud and fraud in the inducement; and (3) one cause of **action** for negligence.

On July 29, 2013, IFFCO removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.

On September 14, 2014, the Court issued a memorandum of decision and order (the "September 14, 2014 Order") in which it: (i) ordered supplemental briefing on the question of whether International had been properly served; (ii) dismissed without prejudice the Plaintiff's claims for breach of contract, fraud, and negligent misrepresentation; and (iii) dismissed with prejudice the Plaintiff's claim based on negligence.

On October 3, 2014, the Court so-ordered a stipulation by the parties voluntarily dismissing the Plaintiffs' claims against International. Thus, IFFCO is the only remaining Defendant in this action.

On October 3, 2014, the same day, the Plaintiff filed an amended complaint asserting three claims against the Defendant: (i) a claim for "willful intentional misconduct" based on allegations that the Defendant intentionally withheld information from the Plaintiff regarding the trademark status of its Tiffany snack products; (ii) a claim for fraud based on the Defendant's failure to disclose to the Plaintiff that it did not have a trademark for the Tiffany snack products; and (iii) a claim for "willful and intentional misconduct" based on allegations that the Defendant intentionally refused to provide the Plaintiff with "timely delivery" of the Tiffany snack products, and labelled the products incorrectly.

Presently before the Court is a Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) motion by the Defendant to partially dismiss the first two causes of actions against it.

For the reasons set forth below, the motion by the Defendant is denied in part, and granted in part.

## I. BACKGROUND

Unless otherwise stated, the following facts are taken from the amended complaint and are construed in the light most favorable to the Plaintiffs.

The Court notes that although the two distributorship agreements between the parties were not attached to the amended complaint, they were attached to an affidavit filed by the Defendant in support of its first motion to dismiss pursuant to Fed. R. Civ. P. 12(b). In the September 14, 2014 Order, the Court found the agreements to be incorporated by reference in the original complaint, and thus, admissible at the motion to dismiss stage. (The September 14, 2014 Order, Dkt. No. 19, at 2–5.) As the amended complaint also refers to the terms of both agreements, the Court will also consider them for purposes of the present motion.

### A. The Underlying Factual Allegations

#### 1. The Background on Trademark Law

As is made clear below, the central issue in this case is whether the Defendant should have disclosed to the Plaintiff that it did not have registered trademarks for the products that it sold to the Plaintiff for distribution. As such, the Court finds it necessary to provide a brief background on the underlying principles of trademark protection in this Circuit.

A "trademark" is a "mark which identifies the commercial origin of a product" and is used in a "relationship to goods and trade." 3 Callmann on Unfair Comp., Tr. & Mono. § 17A:10 (4th Ed.). Sections 32 and 43 of the Lanham Act provide protection to trademarks that are registered with the United States Patent and Trademark Office ("USPT Office") and to trademarks that are unregistered. See 15 U.S.C. § 1114; 15 U.S.C. § 1125(a); see also Virgin

Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003). To prevail on a trademark infringement claim under either of these provisions, a plaintiff must demonstrate that "'[1] it has a valid mark entitled to protection and [2] that the defendant's use of it is likely to cause confusion.'" Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999) (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir.1995)

With respect to the first element, the Lantham Act provides that a "mark is entitled to protection when it is inherently distinctive; if the mark is 'merely descriptive,' 15 U.S.C. § 1052(e), it qualifies for protection only if it has acquired secondary meaning, i.e., if it 'has become distinctive of the . . . goods in commerce," id. § 1052(f)." Id. (quoting Arrow, 59 F.3d at 390).

With respect to the second element, the possessor of the trademark must prove that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993). Under the law of this Circuit, a court considers the following factors in determining likelihood of confusion:

> (1) strength of the plaintiff's trade dress; (2) similarity of the trade dresses; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion;(6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.

Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576, 578 (2d Cir. 2005) (quoting Playtex Prods., Inc. v. Georgia–Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004)).

The registration of a trademark with the USPT Office "is *prima facie* evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital Mgmt., Inc. v.

Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999); see also 15 U.S.C. § 1115(a).

However, "[a]s a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark." Time, Inc., 173 F.3d 113, 118. In other words, even if the trademark is registered, the owner of the trademark must still prove "likelihood of consumer confusion as to the source of the allegedly infringing product." Id.; see also Guthrie Healthcare Sys. v. ContextMedia, Inc., 28 F. Supp. 3d 193, 206 (S.D.N.Y. 2014) ("[The plaintiff] has a valid registration for its mark, 'so the issue for determination is whether [the plaintiff] has demonstrated a likelihood of confusion, and we are guided in this inquiry by the Polaroid balancing test.") (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 391 (2d Cir. 1995)).

## 2. The Parties

The Plaintiff is a New York State corporation. It is a wholesale distributor that sells food products and other goods to retail stores in both the United States and internationally.

The Defendant is a Georgia corporation. It imports, manufactures, and sells cookies, biscuits, wafers and other snack products in the U.S., as well as in other countries.

Non-party International is a United Arab Emirates corporation. The Plaintiff alleges that International is the parent company of the Defendant.

## 3. The Trademark Dispute

The Defendant manufactured snack products using the brand name, "Tiffany." On May 20, 2008, International allegedly applied for a federal trademark for "IFFCO Tiffany" at the USPT Office. (Am. Compl. at ¶ 17.) However, Tiffany (NJ) LLC ("Tiffany (NJ)") had already registered a trademark with the USPT Office for the brand, "Tiffany." On this basis, Tiffany (NJ) opposed the trademark application by International.

On September 18, 2009, International filed "an abandonment of its federal trademark registration application for 'IFFCO Tiffany' with the USPT Office." (Id. at ¶ 19.)

Despite the failure by the Defendant to register a trademark for its snack products, the Plaintiff alleges that the Defendant continued to sell "Tiffany [snack products] . . . to small distributors and small outlets, including those catering to [the] sale[] of food products to particular ethnic groups[.]" (Id. at ¶ 57.)

### 4. The Negotiation of the U.S. and Mexico Agreements

Prior to beginning work as an officer for the Plaintiff, Fahim Ibrahimi ("Ibrahimi") had allegedly purchased "[p]roduct" from the Defendant. In so doing, he allegedly formed a relationship with Parvez Bhiwandiwala ("Bhiwandiwala"), an officer **of** the Defendant. The amended complaint does not make clear where Ibrahimi worked prior to beginning his employment with the Plaintiff, nor what kind of "product" he purchased from Bhiwandiwala.

In 2009 and 2010, Bhiwandiwala had "seven or eight conversations" with Ibrahimi over the phone and at the Plaintiff's office. (Am. Comp. at ¶ 75.) During those conversations, Bhiwandiwala repeatedly requested that the Plaintiff purchase the Defendant's Tiffany snack products.

Allegedly, during these interactions, Ibrahimi became "aware" that the Defendant was "selling Tiffany products to small outlets and small distributors and was intentionally led to believe that the sale of [the products] with the name of Tiffany was legal and proper." (Id. at ¶ 62.)

In addition, the Plaintiff alleges that Ibrahimi was also aware that International, the Defendant's parent company, was a "multi billion [sic] dollar company" and had a "good reputation and financial standing." (Id. at ¶ 64.)

Prior to entering into the distribution agreements with the Plaintiff, neither Bhiwandiwala, nor any other employee of the Defendant, disclosed to Ibrahimi that the Defendant had not obtained trademark protection from the USPT Office for its Tiffany snack products.

**5. The U.S. Agreement**

On January 19, 2011, the Defendant entered into an agreement with the Plaintiff (the "U.S. Agreement").  Under the U.S. Agreement, the Plaintiff agreed to distribute and promote the Defendant's Tiffany branded snack products to large retail chain stores in the U.S., including, among others, "Dollar Tree, 99 cents only, Dollar General, Family Dollar, Freds and Variety Whole Sale.  (Gerecci Decl., Ex. A, at § 1.)

The term of the U.S. Agreement was for a "provisional period of twelve months commencing from the date of the first shipment to [the Plaintiff]."  (Id. at § 2.)  In addition, the Agreement gives the Defendant a unilateral right to terminate it upon thirty-days notice:   "This [Agreement] can be withdrawn by [the Defendant] upon issuance of a thirty day notice."  (Id. at § 7.)

**6. The Mexico Agreement**

On July 12, 2011, the Defendant entered into a second agreement with the Plaintiff (the "Mexico Agreement").  Under the terms of the Mexico Agreement, the Plaintiff agreed to promote and to distribute the Defendant's Tiffany-branded snack products to large chain retail stores in Mexico, including "OXXO, Extra, Sunborn, K Stores, 7 11, Soyreana, Commercial Mexicana Bodegas . . , and Waldo[.]"  (Gerecci Decl., Ex. B.)

The term of the Mexico Agreement was for a "provisional period of six months commencing from the date of the first shipment destined to Mexico by [the Plaintiff][.]"   (Id.)

Similar to the U.S. Agreement, the Mexico Agreement gives the Defendant the right to "withdraw[]" the Agreement "upon issuance of a one month notice during its existence[.]"

**7. The Marketing Efforts Undertaken by the Plaintiff**

Immediately following the execution of the U.S. Agreement on January 19, 2011, the Plaintiff purchased $43,643.00 worth of Tiffany Wafers and Tiffany Break products that it intended to market and sell to large retail stores in the U.S.

In addition, the Plaintiff began to promote the Defendant's Tiffany snack products by soliciting big chain retailers, including Dollar Tree. Allegedly, the Plaintiff was advised by an unidentified employee of Dollar Tree that **it** had a policy requiring "any branded product" sold in its stores to "have trademark protections." (Am. Compl. at ¶ 25.)

Thereafter, the Plaintiff filed an application, on the Defendant's behalf, to the USPT Office to obtain trademark certification for the Defendant's Tiffany snack products. Prior to filing the application, the Plaintiff was allegedly unaware that the Defendant had on May 20, 2008 sought and failed to obtain a trademark for its Tiffany brand because Tiffany (NJ) LLC already owned the trademark for "Tiffany."

On March 23, 2012, the Plaintiff received a letter from the counsel for Tiffany (NJ) LLC indicating that it, not the Defendant, owned the trademark for the Tiffany brand. (Id. at ¶ 28.) Allegedly, it was at this point that the Plaintiff first became aware that the Defendant did not possess a trademark for its Tiffany branded products.

Due to the fact that the Defendant did not register a trademark for its snack products, the Plaintiff alleges it was unable to proceed further in the sale or promotion of the Defendant's products in the United States and that Dollar Tree has refused to do business with the Plaintiff.

In addition, the Plaintiff alleges that OXXO, a retail store in Mexico, asked the Plaintiff for information relating to the Tiffany snack products, including a list of ingredients. From October 23, 2011 to February 2012, the Plaintiff alleges that it repeatedly requested the information sought by OXXO from the Defendant. However, according to the amended complaint, the Defendant "refused, willfully, intentionally and purposely to provide the Plaintiff with [the] requested product information." (Id. at ¶ 95.) As a result of the Defendant's delay in providing the requested information, the Plaintiff alleges it was not able to "carry out the terms" of the Mexico Agreement. (Id. at ¶ 98.)

Finally, the Plaintiff alleges that the Defendant sent the Plaintiff snack products that "contained misspelled Spanish words and Spanish grammatical errors." (Id. at ¶ 96.) However, the Defendant allegedly "refused to correct the labelling on the products." (Id. at ¶ 95.)

**8. The Termination of the U.S. and Mexico Agreements by the Defendant**

On November 12, 2012, the Defendant terminated the U.S. and Mexico Agreements. At the time of the termination, the Plaintiff alleges that it had: (i) a total of $250,000 worth of unsold Tiffany branded snack products; (ii) expended $75,000 in the U.S. and $220,000 in Mexico for warehouse fees and expenses related to storing the Defendant's products, which expenses continue to accrue at an unspecified rate; (iii) sold $10,000 worth of the Defendant's products for free at trade shows; (iv) expended $120,000 to promote the Defendant's products at trade shows; and (v) spent $175,000 in hiring brokers to assist in the Plaintiff's marketing efforts.

## II. DISCUSSION

### A. Legal Standard

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally '"accept[s] all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)). However, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twomly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); Luna v. N. Babylon Teacher's Org., 11 F. Supp. 3d 396, 401 (E.D.N.Y. Apr. 7, 2014) ("Conclusory allegations of legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

### B. As to the Choice of Law

As an initial matter, the Court must determine what law it should apply to the Plaintiff's claims for "willful intentional conduct" and fraud.

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state." Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). "Under the

law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." <u>Forest Park Pictures v. Universal Television Network, Inc.</u>, 683 F.3d 424, 433 (2d Cir.2012) (citing <u>In re Allstate Ins. Co. (Stolarz)</u>, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936, 937 (1993)). "In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." <u>Int'l Bus. Machines Corp.</u>, 363 F.3d at 143.

In the September 15, 2014 Order, the Court applied New York law to the Plaintiff's claims for breach of contract, fraud, and negligence because the parties referred solely to New York law in their memoranda and New York had the most significant relationship to the U.S. and Mexico Agreements. (September 14, 2014 Order at 19–20.)

In their present memoranda, the parties again apply New York law to the Plaintiff's fraud and "willful intentional conduct claims." In addition, the negotiations for the U.S. and Mexico Agreements, as alleged, took place in the Plaintiff's New York offices. As such, the Court sees no reason to depart from its previous choice of law analysis and applies New York law to the claims asserted by the Plaintiff in the amended complaint.

## C. As to the Plaintiff's Fraud Claim

In the amended complaint, the Plaintiff asserts a fraudulent concealment claim. Specifically, the Plaintiff alleges that the Defendant intentionally failed to disclose to the Plaintiff that it had not obtained trademark protection from the USPT Office for its Tiffany snack products. (Am. Compl. at ¶ 68.) It claims that the Defendant's omission was "intended to defraud the Plaintiff" by inducing it to enter into a distribution agreement with the Defendant and to purchase the Defendant's products. (<u>Id.</u>)

"Under New York law, fraudulent concealment requires proof of: (1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 90-91 (2d Cir. 2005) (quoting Brass v. Am. Film Tech., Inc., 987 F.2d 142, 152 (2d Cir. 1993)).

With respect to the first element — a duty to disclose —, the Second Circuit has stated:

[i]n the context of a business transaction, the duty to disclose arises where a party, with a duty to be complete, (1) has made only a partial or ambiguous statement, or (2) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

Id. (quoting Brass v. Am. Film Tech., Inc., 987 F.2d at 152).

Further, a claim for fraud is also subject to the particularity pleading requirements of Fed. R. Civ. P. 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." IKB Int'l S.A. v. Bank of Am. Corp., 584 F. App'x 26, 27 (2d Cir. 2014) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

In the September 15, 2014 Order, the Court found that the original complaint satisfied: (a) the second element of fraudulent inducement — intent to defraud — and (b) the fourth element — damages. (The September 14, 2014 Order at 30–32.)

However, the Court found that the original complaint failed to plausibly allege the first element — a duty to disclose. (Id. at 33.) It found that although the allegations were sufficient to demonstrate that the Defendant had superior knowledge to the Plaintiff with regard to the trademark status of its snack products, it did not plead allegations sufficient to show that the

Defendant "knew that the Plaintiff was "acting on the basis of mistaken knowledge" when entering into the U.S. Agreement."  (Id.)

The Court also concluded that the Plaintiff failed to demonstrate the third element — reliance — because there was no allegation that it was reasonable for the Plaintiff to rely on the Defendant to "provide all relevant information about the IFFCO Tiffany products."  (Id. at 32) (internal quotation marks omitted).

Finally, the Court found that the complaint also failed to meet the more onerous pleading requirements of Fed. R. Civ. P. 9(b) because:

> the Complaint does not include any details concerning which representatives of IFFCO chose not to disclose information about the 'Tiffany' brand to the Plaintiff nor does it provide context for IFFCO's alleged omission referencing specific times during the contract negotiations when IFFCO's representatives could have disclosed the information about the 'Tiffany' brand to the Plaintiff but did not do so.

(Id. at 30.)  Despite the Plaintiff's failure to adequately allege a fraudulent inducement claim, the Court, in its discretion, gave the Plaintiff leave to file an amended complaint. (Id.)

In its present motion, the Defendant asserts that the amended complaint still fails to plausibly allege a fraudulent inducement claim because it contends: (i) the allegations do not support the claim that the Defendant had superior knowledge regarding the trademark status of its products; (ii) there are no allegations establishing that the Defendant knew that the Plaintiff was acting on the basis of mistaken knowledge; and (iii) there are no allegations evidencing a duty to disclose that is independent of the U.S. and Mexico Agreements.  (The Def.'s Mem. of Law 5–8.)

Although not easy to follow, in opposition to the Defendant's motion, the Plaintiff appears to assert that (i) the Defendant did have superior knowledge of the policies of large retail stores prohibiting the sale of non-trademarked products; and (ii) the Defendant should have

known that the Plaintiff would not have entered into the U.S. and Mexico Agreements if it had known that the Tiffany snack products could not be purchased by large retail stores. (The Pls.' Mem. of Law at 8–19.)

For the reasons set forth below, the Court finds the Plaintiff had adequately pled its fraudulent inducement claim. As the Court has already addressed second element — intent to defraud — and the fourth element — damages — in the September 15, 2014 Order, and neither party disputes the**se findings** in their present memoranda, the Court does not address them again.

In addition, the Court finds that the amended complaint satisfies its obligations under Fed. R. Civ. 9(b), which, as noted above, requires that "the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." IKB Int'l S.A. v. Bank of Am. Corp., 584 F. App'x at 27 (quoting Eternity Global Master Fund Ltd., 375 F.3d at 187).

The amended complaint includes the specific details regarding the Defendant's alleged omissions that the Court found to be missing from the original complaint. Specifically, as alleged in the amended complaint, Bhiwandiwala, an officer of the Defendant, spoke with Ibrahimi, an officer for the Plaintiff, on seven to eight occasions in 2009 and 2010 over the phone and at the Plaintiff's office. (Am. Compl. at ¶ 75.) During those conversations, Bhiwandiwala urged Ibrahimi, on behalf of the Plaintiff, to enter into a distributorship agreement with the Defendant to purchase the Defendant's Tiffany snack products. (Id. at ¶ 77.) Further, Bhiwandiwala did not "advise [Ibrahimi]" at any point during these conversations "that [the] Defendant and International did not have the right to use the Tiffany name." (Id. at ¶ 81.) In the

Court's view, these allegations are clearly specific enough to satisfy the standard under Fed. R. Civ. P. 9(b).

Therefore, the Court will turn its attention the first and third elements of fraudulent inducement that form the central basis of the parties' dispute — namely, (i) whether the Defendant had a duty to disclose to the Plaintiff that its Tiffany products did not have registered trademarks; and (ii) whether the Plaintiff relied on the Defendant to provide it with such information.

**1. The Duty to Disclose**

With respect, to a duty to disclose, the Plaintiff relies primarily on the superior knowledge theory. Under that theory, courts can infer a duty to disclose "where (1) one party possesses superior knowledge, (2) not readily available to the other, and (3) knows that the other is acting on the basis of mistaken knowledge." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (quoting Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)).

Regarding superior knowledge, the amended complaint alleges that that on May 20, 2008, the Defendant sought and failed to obtain a certified trademark for its Tiffany snack product. (Am. Comp. at ¶ 17.) As such, the Plaintiff alleges that the Defendant was aware prior to entering the U.S. Agreement with the Plaintiff on January 19, 2011 that it did not have "the right to use . . . [the] Tiffany trademark." (Id. at ¶ 17.) Further, according to the amended complaint, the Defendant also "knew prior to January 19, 2011 that large outlet distributors . . . would need to ascertain . . . the ownership of the Tiffany brand name**."** (Id. at ¶ 72.) As the Plaintiff contends that it was unaware that the Defendant did not possess a certified trademark for its Tiffany brand and that chain retailers would not purchase branded products from the

Plaintiff without a trademark certification, the Court finds that the Plaintiff has adequately alleged that the Defendant had superior knowledge required to form the basis of a fraudulent concealment claim.

Regarding whether the information was "readily available," the Defendant is correct that the Plaintiff could have consulted public sources, such as the USPT website, to determine whether the Defendant had a registered trademark for its Tiffany snack products. However, that fact does not end the matter, as the Defendant contends.

On the contrary, in Brass v. Am. Film Technologies, Inc., 987 F.2d 142 (2d Cir. 1993), the Second Circuit found a duty to disclose at the motion to dismiss stage even though the information was readily available to the plaintiff. There, the plaintiff, an investor, alleged that prior to purchasing the defendant's common stock, the defendant-corporation failed to disclose to the plaintiff that the shares would not be transferable for at least two years. Id. at 144–46. The information regarding the restriction was "readily available to [the] plaintiff by contacting the Securities and Exchange Commission[.]"

However, the court noted that in "an increasing number of situations, a buyer is not required to conduct investigations to unearth facts and defects that are present, but not manifest." Id. The court found that such an investigation was inappropriate in that case because the defendant met with the plaintiff on multiple occasions to solicit his business and never disclosed the sales restriction on the shares. Id. It found that this conduct — "especially [the chief executive's] representations to [the plaintiff] about the upward potential of [the defendant's securities] on the open market — strongly implied that the stock . . . could be freely traded." Id. Under such circumstances, the court found that the plaintiff had adequately pled that the defendant had a duty to disclose the sales restriction on its shares to the plaintiff based on its

superior knowledge.  Id.  Accordingly, the Second Circuit reversed the district court's decision to grant the defendant's Rule 12(b)(6) motion.  Id. at 153.

Here, as in Brass, the Plaintiff alleges that Bhiwandiwala, an officer of the Defendant, repeatedly solicited Ibrahimi, an officer for the Plaintiff, to enter a distributorship agreement with the Defendant and purchase the Tiffany snack products.  (Am. Compl. at ¶ 75.).  Bhiwandiwala, among other things, "promised [Ibrahim] that if [the] Plaintiff agreed to develop the Tiffany branded range Products[,] the Defendant would initially give [the] Plaintiff exclusive right to sell the Tiffany Products to large outlets[,] such as Dollar General."  (Id. at ¶ 80.)  Bhiwandiwala's statements imply that the Defendant's Tiffany snack products could be sold in large chain retail stores.  Thus, under the circumstances, the amended complaint plausibly alleges that Bhiwandiwala had a duty to disclose to the Plaintiff that the Defendant did not have a trademark for its Tiffany branded snack products and therefore those products could not be sold in Dollar tree and other large chain retail stores.

Regarding whether the Defendant knew that the Plaintiff was acting on the basis of mistaken knowledge, the amended complaint alleges that Ibrahim repeatedly expressed his reluctance to Bhiwandiwala about entering into a distributorship agreement because of the "known costs product development."  (Id. at ¶ 78.)  To induce the Plaintiff into entering such an agreement, the Defendant allegedly represented to the Plaintiff that the Tiffany products had only a "small share of its potential market," and that by entering an agreement to purchase and distribute the products, the Plaintiff would be able to "grow the Tiffany brand and thereby gain large profits."  (Id. at ¶ 77.)  Based on these representations, the Court finds it plausible to infer that the Defendant was on notice that the Plaintiff would not have entered into an agreement to distribute the Tiffany snack products had it been aware that those products could not be sold in

large chain stores, such as Dollar Tree. See Brass, 987 F.2d at 152 ("[T]he amended complaint sets out that [the defendant's chief executive] knew of the restrictions and 'also surely knew' that if [the plaintiffs] were informed of these restrictions, '[the plaintiff] would never consider a purchase' of the securities . . . . [The] [p]laintiffs' complaint adequately pleads defendant's 'notice' of [the] [p]laintiff's ignorance to survive the motion to dismiss.").

In addition, the Court is not persuaded by the Defendant's arguments supporting its motion to dismiss.

First, the Defendant asserts that there is no allegation that the Defendant had "superior knowledge of Dollar Tree's internal polic[y]" requiring products to have registered trademarks. (The Def.'s Mem. of Law at 5.) However, the amended does plainly contain such an allegation: "[The Defendant] knew prior to January 19, 2011 that large outlet distributors such as Dollar Tree and Walgreens would need to ascertain prior to the issuance of a substantial purchase order, the ownership of the Tiffany brand name and the right to use [the] same." (Am. Compl. at ¶ 72.) Moreover, the fact that the Defendant applied to the USPT Office to obtain a trademark for its Tiffany brand of snack products prior to entering into the distributorship agreements plausibly suggests that the Defendant was aware that large chain retail stores had such a requirement.

Scond, the Defendant contends that the Plaintiff did not allege a duty to disclose trademark information that was independent of the U.S. and Mexico Agreements, and therefore, its claim must fail.

The Second Circuit in Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) has held that "[w]here a fraud claim 'is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in

fraud does not lie." See also Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("Under New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'") (quoting Sudul v. Computer Outsourcing Servs., 868 F.Supp. 59, 62 (S.D.N.Y. 1994)).

While the Plaintiff did assert breach of contract claims in its original complaint, it did not assert breach claims in its amended complaint. Therefore, its fraud claim cannot be said to be duplicative of a breach of contract claim, as the Defendant contends, and Bridgestone does not apply. Further, even if Bridgestone did apply, the Court, as noted above, finds that the Plaintiff has adequately alleged a duty to disclose that is based on Bhiwandiwala's representations to Ibrahim during negotiations, not any explicit or implicit obligations covered in the U.S. and Mexico Agreements.

Third, the Court finds that the cases cited by the Defendant in support of its contention that the Plaintiff has not sufficiently alleged a duty to disclose are factually distinguishable or involve factual records that were more developed than the record before this Court at the motion to dismiss stage. See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 147 (2d Cir. 1995) (granting summary judgment to the defendant on the plaintiff's fraud claim because "there is no basis in the record for concluding that MNB knew that [the Plaintiff] was either relying on MNB for that information or acting on the basis of mistaken information."); Innovative Design & Bldg. Servs., LLC v. Arch Ins. Co., No. 12-CV-5474 (AJN), 2014 WL 4770098, at *1 (S.D.N.Y. Sept. 23, 2014) (following a bench trial concluding

that the plaintiff did not have a duty to disclose information to the plaintiff prior to closing a transaction because the parties did not have contact with each other during the negotiations).

Based on the foregoing reasons, the Court finds that the Plaintiff has adequately alleged that the Defendant had a duty to disclose to the Plaintiff that it did not have a registered trademark for its Tiffany brand and that large chain retail stores had policies requiring that products sold in its stores have registered trademarks.  See Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 244 (S.D.N.Y. 2006) ("[The] [p]laintiffs also allege a duty to disclose on the grounds that (1) [the] [d]efendants had superior knowledge of the Corporations' financial condition; (2) information about the Corporations' financial condition was not readily available to [the] [p]laintiffs; and (3) [the] [d]efendants were aware that [the] [p]laintiffs were operating under a mistaken perception regarding to the financial condition of the Corporations . . . . As [the] [p]laintiffs may be able to demonstrate an independent duty of disclosure consistent with these allegations, [the] [p]laintiffs' fraud allegations are sufficient to support a fraud claim.").

### 2. Reliance

Finally, the parties dispute whether the amended complaint sufficiently alleges reliance — the third element of fraudulent inducement.  To sustain a fraud claim, a plaintiff must show "justifiable reliance of the other party on the misrepresentation or material omission." Whitehead v. Town House Equities, Ltd., 8 A.D.3d 367, 368, 780 N.Y.S.2d 15, 17 (N.Y. 2004) (quoting Cayuga Partners, LLC v. 150 Grand, LLC, 305 A.D.2d 527, 527, 759 N.Y.S.2d 347, 348 (N.Y. 2003).

In the September 15, 2014 Order, the Court found that the original complaint failed to sufficiently allege reliance because "there was no allegation that it was reasonable [for the

Plaintiff] to rely on IFFCO to provide 'all relevant information' about the IFFCO Tiffany product."

The Court finds that the amended complaint cures this deficiency by alleging that the Plaintiff relied on the statements made by Bhiwandiwala to Ibrahimi regarding the Tiffany brand and the "standing" and reputation of International as a company. (Am. Compl. at ¶ 85.) See Childers v. New York & Presbyterian Hosp., 36 F. Supp. 3d 292, 310 (S.D.N.Y. 2014) ("[T]he Childers Complaint alleges that [the] [p]laintiffs did rely on the Hospital and that they did not have access to all material information, specifically, information regarding the Hospital's Settlement with the IRS. Thus, the Childers Complaint alleges sufficient facts, if proven true, from which a reasonable jury could find reasonable reliance.").

In sum, the Court finds that the Plaintiff has adequately alleged a claim for fraudulent concealment because: (i) in the September 15, 2014 Order, the Court held that Plaintiff satisfied scienter, the second element, and damages, the fourth element; (ii) the amended complaint contains allegations sufficient to cure the deficiencies identified by the Court in the original complaint with respect to the duty to disclose, the first element; reliance, the third element; and the pleading requirements of Fed. R. Civ. P. 9(b).

**D. As to the Plaintiff's Willful Intentional Misconduct Claims**

The Plaintiff alleges two claims for "willful intentional misconduct." The Court has not identified, nor has the Plaintiff pointed to, any legal authority in New York or otherwise that recognizes a claim for "willful intentional misconduct."

Moreover, both claims are duplicative of the other claims asserted by the Plaintiff. The first cause of action for "willful intentional misconduct" is based on the same allegations that form the basis of the Plaintiff's fraud claim — namely, that the Defendant "intentionally and

willfully" withheld from the Plaintiff that the Defendant did not have a trademark for its Tiffany brand snack products.  (Am. Compl. at 55–60.)

The third cause of action for "willful intentional misconduct" is based on allegations that the Defendant refused to timely provide the Plaintiff with information regarding the Tiffany snack products and that the Defendant failed to correct spelling mistakes on the labels of the products that it shipped to the Plaintiff in Mexico.  (Id. at 91–99.)  These claims are nearly identical to the breach of contract claims that the Plaintiff asserted in its original complaint, which the Court dismissed in the September 14, 2014 Order:  "[T]he Court finds that at this stage, the Plaintiff has not yet adequately made out a breach of contract claim based on either the improper product labeling or the failure to provide certain product information."  (September 15, 2014 Order at 26.)

Although the Defendant addressed it motion solely with respect to the Plaintiff first cause of action for willful intentional misconduct, the Court finds both causes of action for "willful intentional misconduct" fail as a matter of law because the Plaintiff has provided no legal authority recognizing a cause of action for "willful intentional misconduct" and both claims are duplicative of other claims asserted by the Plaintiff.

### III. CONCLUSION

Based on the foregoing reasons, the Court denies the motion by the Defendant to dismiss the second cause of action for fraud and grants the Defendant's motion with respect to the Plaintiff's first and third causes of action for "willful intentional misconduct."

**SO ORDERED.**
Dated: Central Islip, New York
July 6, 2015

                              _/s/ Arthur D. Spatt___
                              ARTHUR D. SPATT
                              United States District Judge